IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN LUKOWICH, | ) | |
| Petitioner, | ) | Civil Action No. 08-143 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| MR. PATRICK, SUPERINTENDENT | ) | |
| SCI HOUTZDALE, et al., | ) | |
| Respondents. | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.      RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.


**II.     REPORT**

On August 20, 2003, an Erie County jury found Petitioner, Steven A. Lukowich, guilty of numerous crimes relating to the sexual molestation of his minor daughter, A.L., over the course of one year, beginning in April of 1998 when she was eight years old. Petitioner raises the following five claims for federal habeas relief:

> **Claim 1**     The trial court erred in allowing the Commonwealth to present evidence of Petitioner's "flight" in support of a theory that his actions showed consciousness of guilt;
>
> **Claim 2**     His trial attorney, Keith H. Clelland, Esq., provided him with ineffective assistance because he:
>
> > (a) failed to use the defense that caseworkers with the Erie County Office of Children & Youth ("OCY") implanted false memories into A.L. by way of suggestive and directional questioning;

1

> (b) failed to call as defense witnesses his family therapist Bobbe Cullers; his sister, Laura Lukowich; and, his sister-in-law, Jillian Maggio;
>
> (c) failed to utilize three appraisals of his mother's house, where A.L. alleged that some of the abuse had occurred, to contradict certain references and descriptions she made regarding the location of the abuse;
>
> (d) had a conflict of interest in that A.L.'s aunt, Lillian Reyes, was employed in the Public Defender's Office; and,
>
> (e) failed to properly prepare defense witness Patricia Lukowich (Petitioner's mother).

[Petition, ECF No. 1 at pp. 13-14].

### A.     Relevant Background[1]

In June of 1999, A.L. first revealed to her mother, Julie Lukowich (Petitioner's ex-wife), that Petitioner had been engaging in sexual activity with her over the course of the previous year. Julie Lukowich reported A.L.'s allegations to the Erie Police Department, which then commenced a criminal investigation. Detective James Washburn was assigned to the case, as was a caseworker from OCY. In June of 1999, the OCY interviewed A.L. on two occasions. Also at OCY's request, a doctor physically examined her. On September 22, 1999, Detective Washburn interviewed A.L. and she stated that Petitioner had kissed and massaged her entire body, including her genitals and buttocks. The investigation was left open but no charges were filed against Petitioner at that time.

Approximately two years later, Detective Washburn re-interviewed A.L. Then, on June 20, 2002, the Erie County District Attorney's Office filed a Criminal Information against Petitioner charging him with two counts of Involuntary Deviate Sexual Intercourse; one count of Aggravated Indecent

---

[1] Respondents have submitted the Common Pleas Court's original file and transcripts, as well as all briefs filed in Petitioner's two appeals. The documents contained in that Common Pleas Court's file are numbered 1 through 59 and shall be cited to as "CP Dkt. No. ___."

Assault; two counts of Indecent Assault; one count of Endangering the Welfare of Children; and, one count of Corruption of Minors. (CP Dkt. No. 1).

Petitioner's trial was originally scheduled to take place in November of 2002. At his request, it was continued until January of 2003. He failed to appear for trial, and a bench warrant was issued. The complete and bizarre details recounting what occurred are set forth in the trial court's Memorandum Opinion & Order dated January 22, 2004. (CP Dkt. No. 29, Commonwealth v. Lukowich, No. 1252 of 2002, slip op. at pp. 3-10 (C.P. Erie Jan. 22, 2004)). To briefly summarize, Petitioner had re-married in June of 1999 and moved to South Carolina with his new wife, Michelle. In January of 2003, he and Michelle conspired to fake his death. Their elaborate scheme involved staging his own disappearance and murder by cutting himself and smearing blood inside of his vehicle, cutting out the pacemaker from his own chest, burning it, and mailing it to Michelle along with a letter indicating that Petitioner had been killed.[2] Afterwards, Petitioner left South Carolina and traveled to Texas and then Mexico. He eventually surrendered to authorities in April of 2003.

Petitioner would later testify at his molestation trial that all of his actions were undertaken because of financial troubles he was experiencing. According to him, he and Michelle carried out their strange and elaborate scheme so that she could collect his life insurance benefits and then reunite with

---

[2] On January 9, 2003, Michelle Lukowich reported to police that she had received in the mail Petitioner's pacemaker and a letter, which was addressed to "Wife of the Beast." The letter read as follows:

> Fear not for I have taken the beast of the children, as God has commanded me to rid the world of it. Fear not for your immortal soul can also be saved. As the Lord has commanded I have carved its body with the tree crosses from when Jesus was crucified, and purged its soul with fire as God had done to the wicked of Babylon. I have sent you the head of Jesus' cross. Soak it in oil and burn it while you pray for guidance. Your child as well as the children of the world shall be safe. Take heart in the fact that even its cold metal heart exploded in the fire.

(CP Dkt. No. 29, Attach. I; see also 8/19/03 Trial Tr. at p. 176).

3

him later without anyone knowing.  The Commonwealth countered that Petitioner attempted to fake his own death to avoid prosecution for the pending molestation charges against him and that his actions displayed a consciousness of guilt.

The trial court appointed Keith H. Clelland, Esq., to represent Petitioner.  Clelland is an experienced criminal defense attorney and had tried at least 150 criminal cases over the decade or so leading up to his representation of Petitioner.  (6/21/06 Hr'g Tr. at p. 22).

Petitioner's three-day trial commenced on August 18, 2003.  The Commonwealth presented many witnesses in support of its case, including A.L.; her mother, Julie; the physician who examined A.L.; and, several investigators.  Petitioner testified in his defense and denied the charges against him.  The jury did not credit his testimony and found him guilty of all charges.  The trial court sentenced him to an aggregate term of imprisonment of no less than 14.75 years to no more than 39 years, to be followed by five years of probation.

Petitioner, through counsel with the Public Defender's Office, filed an appeal to the Superior Court of Pennsylvania.  He raised only one claim that is relevant to this habeas proceeding.  He contended that "it was error to allow the Commonwealth to present evidence supposedly of 'flight' in support of a theory that [his] actions showed consciousness of guilt."  (See *Brief For Appellant* in Commonwealth v. Lukowich, 188 WDA 2004 (Pa.Super.)).  Petitioner raises the same claim in the instant habeas petition and it is designated above as Claim 1.

On May 26, 2005, the Superior Court issued a Memorandum in which it denied Claim 1 on the merits and affirmed Petitioner's judgment of sentence.  (CP Dkt. No. 40, Commonwealth v. Lukowich, No. 188 WDA 2004, slip op. (Pa.Super. May 26, 2005)).  The Pennsylvania Supreme Court denied his petition for allowance of appeal on September 21, 2005.

4

On or around March 21, 2006, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, in which he raised the same ineffective assistance of counsel claims that are set forth above as Claim 2(b) (failure to call as defense witnesses Bobbe Cullers, Laura Lukowich, and Jillian Maggio); Claim 2(c) (failure to utilize home appraisals to contradict A.L.'s testimony that some of her abuse occurred in the renovated basement of her grandmother's house); and, Claim 2(d) (conflict of interest because A.L.'s aunt worked for the Public Defender's Office). (See CP Dkt. No. 41 at p. 3). Petitioner *did not raise* the ineffective assistance claims set forth herein as Claim 2(a) (failure to use the defense that the OCY had implanted memories into A.L. through suggestive questioning) and Claim 2(e) (failure to properly prepare defense witness Patricia Lukowich).

The PCRA Court appointed William J. Hathaway Esq., to represent Petitioner. Hathaway filed a Supplement to the PCRA motion in which he provided further argument in support of Claims 2(b) and 2(d), and in which he expressed that, in his opinion, Claim 2(c) had no merit. (CP Dkt. No. 43 at pp. 2-6).

On June 21, 2006, the PCRA Court presided over an evidentiary hearing at which Petitioner and his trial counsel, Attorney Clelland, testified. (See 6/21/06 Hr'g Tr.). Petitioner also presented written statements from Bobbe Cullers, Laura Lukowich, and Jillian Maggio. The Commonwealth stipulated that they would have testified at trial consistently with their statements. (6/21/06 Hr'g Tr. at pp. 19-21). Petitioner has attached their statements to his habeas petition.

At the conclusion of the PCRA hearing, the court denied Petitioner's claims and set forth its reasoning in an oral order. (Id. at pp. 50-53). Petitioner, through Hathaway, filed an appeal with the Superior Court. Importantly, he raised only one claim on appeal: that the PCRA Court erred in denying Claim 2(b) (which argued that Clelland was ineffective for failing to call Bobbe Cullers, Laura

5

Lukowich, and Jillian Maggio). (CP Dkt. No. 50; see also *Brief for Appellant*, No. 1329 WDA 2006 (Pa.Super.)). Thereafter, the PCRA Court issued a Memorandum Opinion in which it set forth in more detail its reasons for denying Claim 2(b). (CP Dkt. No. 51, Commonwealth v. Lukowich, 1252 of 2002, slip op. (C.P. Erie Aug. 28, 2006)).

On March 8, 2007, the Superior Court issued a Memorandum in which it denied Claim 2(b) on the merits and affirmed the PCRA Court's decision. (CP Dkt. No. 58, Commonwealth v. S.A.L., No. 1329 WDA 2006, slip op. (Pa.Super. Mar. 8, 2007)).

After the Superior Court issued its decision, Petitioner filed a second PCRA motion. He claimed that he was taking Paxil when he fled prior to his trial in January 2003, and that that drug caused him to become depressed, which in turn caused him to attempt to fake his own death. He contended that he had just learned that Paxil caused depression, and presented the claim as after-discovered evidence of his innocence. (CP Dkt. No. 54). The PCRA Court denied the motion as untimely and as an improper second or successive motion. (CP Dkt. No. 56, Commonwealth v. Lukowich, No. 1252 of 2002, slip op. (C.P. Erie Nov. 15, 2007); CP Dkt. No. 57). Petitioner did not file an appeal with the Superior Court.

Next, Petitioner commenced proceedings in this Court by filing the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1]. Respondents have filed their Answer [ECF No. 6] and the state court record, and the case is ripe for review.

## B.     Discussion

### (1)     The Federal Habeas Corpus Statute

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the

grounds that Petitioner's judgment of sentence was obtained in violation of his rights under the United States Constitution or an applicable federal statute. 28 U.S.C. § 2254(a).

In 1996, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004); see also Lewis v. Horn, 581 F.3d 92, 109-18 (3d Cir. 2009). As codified at 28 U.S.C. § 2254(d), AEDPA provides deference to the state court's legal and factual decisions when the state court has adjudicated a claim on the merits. It will be explained in more detail below in the discussion of Claim 2(b), which is subject to review under it.

Section 2254 also provides that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner first has exhausted the remedies available in the state courts. See e.g., Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), citing 28 U.S.C. § 2254(b)(1)(A). The doctrine of "exhaustion" requires a state prisoner to first present his federal constitutional claims to the state courts before raising those claims in federal habeas court. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999). This requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002), quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991). Exhaustion "addresses federalism and comity concerns by 'affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Parker v. Kelchner, 429 F.3d 58, 61 (3d Cir. 2005), quoting Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993), which quoted Vasquez v. Hillery, 474 U.S. 254,

7

257 (1986). "The exhaustion requirement is not one to be overlooked lightly." Id. at 62, quoting Rutherford v. Neet, 149 F.3d 1191 (10th Cir. 1998).

In order to exhaust a claim, a petitioner must "fairly present" it *to each level of the state courts*. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848; Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, — U.S. — , 130 S.Ct. 612 (2009). In Pennsylvania, this requirement typically means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to both the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. See Lambert, 387 F.3d at 233-34.

### (2)  Claim 1 Is Not Cognizable In Federal Habeas

In Claim 1, Petitioner contends that the trial court erred in allowing the Commonwealth to present evidence of his "flight" in support of the theory that his actions showed consciousness of guilt. Respondents correctly contend that this claim is not cognizable under 28 U.S.C. § 2254 because Petitioner has failed to allege any deprivation of a right under the United States Constitution or any applicable federal statute. As they point out, when Petitioner raised this same claim in his direct appeal, he did not allege a violation of any federal right. He raised the issue as a matter of state law regarding the admissibility of evidence and the ancillary issue of the trial court instructing the jury that the law permitted it to consider Petitioner's flight as evidence of consciousness of guilt. Petitioner also argued that in light of his testimony, in which he provided an alternative explanation for his actions, it was not reasonable for the jury to infer his flight was evidence of consciousness of guilt. (See *Brief For Appellant* in Lukowich, 188 WDA 2004, at pp. 3, 20-25).

8

The Superior Court determined the evidence of flight was properly admitted at trial. It also concluded that the trial court's instruction accurately advised the jury of the applicable Pennsylvania law. (CP Dkt. No. 40, Lukowich, No. 188 WDA 2004, slip op. at pp. 8-11).

Federal courts reviewing habeas claims cannot re-examine state court determinations on state law questions. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d. Cir 2004), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.").

Since there is no federal question alleged and federal courts cannot re-examine state court decisions on state law questions, Claim 1 must be denied.

### (3) Claims 2(a) and 2(c)-(e) Are Procedurally Defaulted

As the foregoing review of the procedural history of Petitioner's case demonstrates, he did not raise Claim 2(e) before the state courts. And, although he raised Claims 2(a), 2(c) and 2(d) in his first PCRA motion, he did not raise them in his appeal to the Superior Court. Accordingly, he did not exhaust these claims. See O'Sullivan, 526 U.S. at 845.

Since Petitioner failed to exhaust Claims 2(a) and 2(c), 2(d), and 2(e), they now are "procedurally defaulted." Like the exhaustion doctrine, the procedural default doctrine is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it applies to bar federal habeas relief when a state court has declined or would decline to address a petitioner's federal constitutional claims because he failed to meet a state procedural requirement (*i.e.*, failed to raise them at the proper

9

time). See, e.g., Whitney v. Horn, 280 F.3d 240, 381 (3d Cir. 2002); Lines, 208 F.3d at 166 (when exhaustion of a claim now would be futile because the state court would deem it to be waived or untimely, the claim is procedurally defaulted for federal habeas review).

This Court may review a procedurally defaulted habeas claim only where a petitioner can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice."[3] Coleman, 501 U.S. at 750. Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. Murray v. Carrier, 477 U.S. 478, 486-88, 494 (1986); see also Coleman, 501 U.S. at 752 ("ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice).

Petitioner points to no evidence which would establish "cause" for his default. He cannot rely upon PCRA counsel's (Attorney Hathaway's) decision not to raise Claim 2(e) in the Supplemental PCRA motion, or his subsequent decision not to raise Claims 2(a), 2(c), and 2(d) to the Superior Court. That is because, although the Supreme Court has recognized that attorney error that rises to the level of a Sixth Amendment violation can constitute "cause," Coleman, 501 U.S. at 753-54, Petitioner had no Sixth Amendment right to representation during his PCRA proceeding. Cristin, 281 F.3d at 420 (only attorney error that rises to the level of a Sixth Amendment violation can constitute "cause"), citing Pennsylvania v. Finley, 481 U.S. 551, 554 (1987) and Coleman, 510 U.S. at 752.

---

[3] Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). See also House v. Bell, 547 U.S. 518 (2006); Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. It is not applicable to Petitioner's case.

10

Based upon all of the foregoing, Claims 2(a) and 2(c), (d), and (e) should be denied because they are procedurally defaulted.

### (4) Claim 2(b) Has No Merit

The only claim of Petitioner's that this Court may review on the merits is Claim 2(b), in which he contends that Attorney Clelland provided him with ineffective assistance because he failed to call as defense witnesses his family therapist, Bobbe Cullers; his sister, Laura Lukowich; and, his sister-in-law, Jillian Maggio. He raised this same claim in his first PCRA motion and in his subsequent appeal to the Superior Court, which denied it on the merits. (CP Dkt. No. 53, S.A.L., No. 1329 WDA 2006, slip op. at pp. 3-7).

This Court's review of the Superior Court's adjudication of Claim 2(b) is circumscribed by AEDPA's deferential standard set forth at 28 U.S.C. § 2254(d)(1). It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234.

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze claims of ineffective assistance is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner must show that Clelland's "representation fell below an objective standard of reasonableness." 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

11

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005), quoting Strickland, 466 U.S. at 689. "However, [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id., quoting Strickland, 466 U.S. at 689. There is no one correct trial strategy. See, e.g., Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). "[I]t is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997).

Strickland also requires Petitioner to demonstrate that he was prejudiced by Clelland's alleged deficient performance. This requires him to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The Superior Court applied the correct legal standard when it adjudicated Claim 2(b). (See SCR No. 53, S.A.L., No. 1329 WDA 2006, slip op. at pp. 4-5, citing Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (the legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard)). Therefore, its adjudication was not "contrary to" Strickland. Werts v. Vaughn, 228 F.3d 178, 202-04 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

This Court, then, may grant federal habeas relief only if Petitioner shows that the Superior Court's adjudication of Claim 2(b) was an "unreasonable application" of Strickland. To prevail under this standard of review, Petitioner must demonstrate that the Superior Court's adjudication "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); Knowles v. Mirzayance, — U.S. — , 129 S.Ct. 1411, 1420 (2009), quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold"); Waddington v. Sarausad, 555 U.S. 179, —, 129 S.Ct. 823, 831 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted). This standard adds another hurdle in addition to the already heavy burden Petitioner faces under Strickland. Knowles, 129 S.Ct. at 1420 (noting "the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard.").

**Bobbe Cullers**

At the PCRA evidentiary hearing, Petitioner presented a written statement by Bobbe Cullers. [ECF No. 1-1 at pp. 1-6]. Cullers is a licensed social worker and she provided family therapy to Petitioner beginning in October of 1997 after Julie Lukowich left him and their children to live in Denver, Colorado with another man. In her statement, Cullers recounts that Petitioner told her that after he and Julie had argued over the children's custody, she threatened to bring up sexual abuse that he had suffered as a child in order to make him look like an unfit father. [ECF No. 1-1 at pp. 2-4]. Petitioner also told Cullers that when he informed his children that he was going to move to South Carolina with Michelle and adopt her daughter, A.L. became very upset and started acting out. They next day,

13

Petitioner told Cullers, he learned that he was being accused of molesting A.L. Cullers stated that she regarded the molestation accusations against Petitioner to be "ludicrous and unbelievable after getting to know [Petitioner] as well as I had." [ECF No. 1-1 at p. 4]. She stated: "It is my professional opinion that [Petitioner] does not present as a sexual abuse perpetrator. Although he had been abused as a child, I feel he is not a threat to the community." [ECF No. 1-1 at p. 6].

Petitioner argues that Clelland should have called Cullers as an expert so that she could have offered her opinion that he "does not present a sexual abuse perpetrator." He also contends that her testimony could have been used to establish a motive for A.L. to have fabricated the allegations of abuse (that is, that she was upset because he was moving to South Carolina and adopting Michelle's daughter).

Clelland testified during the PCRA hearing that he interviewed Cullers prior to Petitioner's trial. He stated that he did not attempt to call her an expert because she was not qualified to testify as one. (6/21/06 Hr'g Tr. at pp. 38-39, 43-46). The PCRA Court agreed, holding: "Ms. Cullers in this court's opinion would not have survived an expert qualification to render an opinion that [Petitioner] was not a sexual abuse perpetrator. She was a licensed social worker, acting as a family psychologist, [and] demonstrated no expertise in that particular area[.]" The Superior Court upheld the PCRA Court's determination, noting: "There is no evidence regarding her training or qualifications with respect to analyzing or diagnosing sexual deviancy." (CP Dkt. No. 53, S.A.L., No. 1329 WDA 2006, slip op. at p. 6).

The state court's determination that Cullers would not have been qualified to testify as an expert is an issue of state law that is not subject to review by this Court. See, e.g., Priester, 382 F.3d at 402. Because Cullers could not have testified as an expert, Clelland cannot be found ineffective for opting against attempting to present her as one. For this same reason, Petitioner cannot show that he was prejudiced by Clelland's decision.

14

Petitioner likewise cannot show that he was prejudiced by Clelland's decision not to call Cullers as a lay witness to testify that on June 8, 1999, Petitioner had told her that A.L. was upset because he was moving to South Carolina and adopting Michelle's daughter. Petitioner claims that Cullers' testimony on this point would have presented impeachment material ascribing motive to A.L. to fabricate her allegations of abuse. Petitioner, however, discussed the incident himself during his own direct examination:

> Q. Did there come a time when you discussed your pending marriage and adoption [of Michelle's daughter] with your own children?
>
> A. Yes, there was.
>
> Q. When was that?
>
> A. On June 6, 1999.
>
> - - -
>
> Q. Okay. And who was there when you discussed this with the children? Which children?
>
> A. It was all four children….
>
> Q. Was [A.L.] there?
>
> A. Yes, she was.
>
> Q. What were the reactions of your children when you informed them of this, and specifically which children?
>
> A. Steven was upset more about the marriage … [A.L.] continued on to the point where we actually had to leave the party and I took them home early.
>
> - - -
>
> Q. Did there come a time later, not on that day, but a later point in time that you discovered that there were allegations of sexual abuse against you regarding [A.L.]?
>
> A. Yes.
>
> Q. What day was that?

15

> A. June 6th.
>
> Q. And that was the day that you had informed them?
>
> A. Yes.
>
> Q. What did you do when you discovered that there were these allegations?
>
> A. The first thing I did was I called Bobbie [sic] and told her she was wrong. Bobbie Cowlers [sic].

(8/20/03 Trial Tr. at pp. 30-32).

Because Petitioner discussed the incident during his direct examination and Petitioner has not shown that the facts of it were in dispute, it was not necessary for Clelland to call Cullers to confirm that the incident had occurred. He certainly cannot show that there is a reasonable probability that he would have been acquitted had Cullers been called to testify about what he had told her regarding A.L.'s reaction to the announcement that he was going to move and adopted another daughter, Strickland, 466 U.S. at 694, much less that the Superior Court's denial of this portion of his claim was objectively unreasonable, 28 U.S.C. § 2254(d)(1).

### Jillian Maggio

Petitioner next faults Clelland for not calling as a defense witness his sister-in-law, Jillian Maggio. In her affidavit, Jillian Maggio states:

> I helped [Petitioner] with the care and [sic] of his children after his wife left. My husband (then fiancé), [Petitioner's] brother Michael Maggio, watched the children while [Petitioner] slept during the day because [Petitioner] worked 3rd shift. [Petitioner's] wife left him and the children so his mother Pat Lukowich, his sister Laura Lukowich, and I would help with the baths, clothes, meals, and entertainment of the children especially the girls. I was involved in the children's care until I left to join my husband in Tennessee in January 1999.

[ECF No. 1-4 at p. 1].

Petitioner has not shown how Jillian Maggio's above-cited potential testimony would have assisted his defense.  He therefore has not established that Clelland was objectively unreasonable in failing to call her, that he was prejudiced, or that the Superior Court's denial of this portion of his claim should be disturbed by this Court under 28 U.S.C. § 2254(d).

### Laura Lukowich

Finally, Petitioner faults Clelland for failing to call as a defense witness his sister, Laura Lukowich.  He claims she could have testified that the construction of the room in the basement of the house at 348 West 24th Street in Erie, where A.L. alleged that some of the abuse had taken place, was not completed until June of 1999.  Since A.L. testified that the last instance of abuse occurred *before* June of 1999, Petitioner claims that Laura's testimony could have impeached A.L.'s version of events.

Clelland testified at the PCRA hearing testified that he did call Laura Lukowich because her mother, Patricia, testified to that same fact and he considered her to be the better witness.  (6/21/06 Hr'g Tr. at pp. 25-28, 46-47, 53; see also 8/20/03 Trial Tr. at pp. 96-97).  Clelland's explanation is objectively reasonable.  Therefore, he was not ineffective.  In addition, Petitioner cannot show that he was prejudiced by the absence of his sister's testimony.

Laura Lukowich also states that she remembers that when the charges were filed against Petitioner, "one of the days mentioned were [sic] from the beginning of April 1999.  That time in particular, *I remember that [A.L.] was not with [Petitioner] that night*.  She felt ill and he had Army Reserves the next morning, so she slept upstairs with me in case she needed something during the night."  [ECF No. 1-5 at p. 1 (emphasis added)].  Petitioner claims that Laura's recollection could have impeached A.L.'s allegations.

17

The Court does not agree that Laura Lukowich's recollection would have had any material impact on Petitioner's defense. That is because A.L. could not give any specific dates or times pinpointing the occurrences of her abuse, and could only state that it may have ended around two months before June of 1999. (See 8/19/03 Trial Tr. at pp. 70, 80-83). Therefore, Petitioner has not shown that there is a reasonable probability that he would have been acquitted had his sister been called to testify about her recollection that A.L. slept with her on an unspecified night in April of 1999, Strickland, 466 U.S. at 694, and he has not shown that the Superior Court's denial of this portion of his claim was objectively unreasonable, 28 U.S.C. § 2254(d)(1).

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would

not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: January 11, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge